**THOMAS J. GOSSÉ, ESQUIRE**
I.D. No: 02750-1981
126 White Horse Pike
Haddon Heights, New Jersey 08035
(856) 546-6600
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KRYSTAL A. UNDERWOOD | : |
| | : |
| Plaintiff | : |
| | : |
| vs. | : Civil Action: 1:22-cv-02268-KMW-SAK |
| | : |
| CAMDEN COUNTY OFFICE OF THE | : |
| SHERIFF,CAMDEN COUNTY OFFICE | : |
| OF THE SHERIFF EMERGENCY | : |
| RESPONSE TEAM (SERT), BRAD | : **AMENDED** |
| BOEHLY, MARK KEMNER, ZACHARY | : **COMPLAINT AND DEMAND** |
| KOLINS, MICHAEL MCNAMEE, SCOT | : **FOR JURY TRIAL** |
| MENNEL, ROBERT PLEWS, DONALD | : |
| SOUDER, DAVIDWRIGHT, ANDREW | : |
| AUSTIN, STEPHEN BEZICH, SAL | : |
| RUSSOMANNO, CAMDEN COUNTY | : |
| PROSECUTOR'S OFFICE,  JOSEPH | : |
| MILLER, DETECTIVE JASON | : |
| HARMON, CHERRY HILL POLICE | : |
| DEPARTMENT, MICHAEL HIGGINS, | : |
| JOHN/JANE DOES 1-10, ABC | : |
| CORPORATIONS 1-5, jointly, severally | : |
| and/or in the alternative | : |
| | : |
| Defendants | : |
| | : |

Plaintiff, Krystal A. Underwood, residing at 13700 Richmond Park Drive, Unit 909, in the City of Jacksonville, County of Duval and State of Florida, complaining of the defendants says:

## INTRODUCTORY STATEMENT

1.      This is a civil action against the defendants for monetary relief. It seeks to redress the deprivation under color of law of the rights, privileges and immunities secured by the United States Constitution and the amendments thereto, the laws of the United States, including *inter alia* 42 US.C. §1983, the Constitution of the State of New Jersey, the New Jersey Civil Rights Act, (N.J.S.A. 10:6-1 *et. seq.*) and the common law of the State of New Jersey.

2.      Plaintiff also asserts claims pursuant to the common law of the State of New Jersey.

## PARTIES

3.      At the time of the incident, plaintiff, Krystal A. Underwood, was a resident of the City of Gloucester in Camden County, New Jersey.

4.       At all times relevant hereto, Michael Higgins and/or John/Jane Doe and/or ABC corporation was the owner and/or person or entity responsible for the maintenance and the administrative tasks associated with 308 Walnut Avenue, Gloucester City, New Jersey.

5.       At all times relevant hereto, Michael Higgins and/or John/Doe and/or ABC corporation was the landlord for the property located at 308 Walnut Avenue, and specifically the plaintiff's landlord.

6.    At all times relevant hereto, defendant Brad Boehly was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

7.    At all times relevant hereto, defendant Mark Kemner was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

8.    At all times relevant hereto, defendant Zachary Kolins was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

9.    At all times relevant hereto, defendant Michael McNamee was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

10.    At all times relevant hereto, defendant Scot Mennel was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

11.    At all times relevant hereto, defendant Robert Plews was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer and/or Lieutenant.

12.    At all times relevant hereto, defendant Donald Souder was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

13.    At all times relevant hereto, defendant David Wright was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

14.    At all times relevant hereto, defendant Andrew Austin was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

15.    At all times relevant hereto, defendant Stephen Bezich was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

16.    At all times relevant hereto, defendant Sal Russomanno was employed by the County of Camden under the direction of the Camden County Office of the Sheriff as an Emergency Response Team (SERT) Officer.

17.    At all times relevant hereto, defendant Camden County Office of the Sheriff Emergency Response Team (SERT), was comprised of officers employed by the County of Camden under the direction of the Camden County Office of the Sheriff. It is charged with the responsibility of establishing and enforcing policies for the training and actions of its employees, as well as the actual supervision of its employees.

18.    At all times relevant hereto, defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Camden County Office of the Sheriff Emergency Response Team (SERT) and various John/Jane Does were acting under color of law. This action is brought against these defendants both in their individual and in their official capacities.

19.     At all times relevant hereto, defendant Joseph Miller was employed by the County of Camden under the direction of the Camden County Prosecutor's Office as a Detective of the Narcotics Unit.

20.     Defendant Detective Jason Harmon, was employed by Cherry Hill Township Police Department, a municipal corporation organized and existing under the laws of the State of New Jersey and responsible for establishing and training its employees, as well as the actual supervision of its employees.

21.     At all times relevant hereto, defendant Detective Jason Harmon, was acting under the color of law.  This action is brought against defendant Jason Harmon in his individual and official capacities.

22.     At all times relevant hereto, defendants Joseph Miller and various John/Jane Does were acting under color of law. This action is brought against these defendants both in their individual and in their official capacities.

23.     Defendant Camden County Prosecutor's Office is a municipal corporation organized and existing under the laws of the State of New Jersey, located in the County of Camden, and at all times relevant hereto is/was the employer of Joseph Miller and various John/Jane Does. It is charged with the responsibility of establishing and enforcing policies for the training and actions of its employees, as well as the actual supervision of its employees.

24.     Defendant Camden County Office of the Sheriff was established pursuant to the laws of the State of New Jersey, *inter alia* N.J.S.A. 40A:14-118, and at all times relevant hereto was responsible for the training and supervision of the Emergency Response Team (SERT) with whom plaintiff, Krystal A. Underwood, came in contact and/or all of the individual defendants named above.

25.     John/Jane Does 1-10 (said names being fictitious and the true names unknown), are employees of defendants, Camden County Office of the Sheriff, Camden County Office of the Sheriff Emergency Response Team (SERT), Cherry Hill Township Police Department, Camden County Prosecutor's Office and said John/Jane Does 1-10 were individually involved in the deprivation of plaintiff Krystal A. Underwood's constitutional rights and in the other acts of wrongful conduct more fully described herein below. Each John/Jane Doe defendants was acting under color of law, and each is being sued in his/her individual and official capacities, ABC Corporations 1-5 are entities that may be involved in the creation, supervision, instruction, and regulation of the named defendants in this matter.

### FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

26.     During February 2020, the Cherry Hill Police Department (CHPD) and the Camden County Prosecutor's Office (CCPO) were working together on the investigation of a white male approximately 26-years-of-age for the alleged distribution of marijuana.

27.     The investigation was initiated when the CHPD received a tip from a confidential source.

28.     Upon receipt of this tip, Detective Jason Harmon of the CHPD contacted Detective Joseph Miller of the CCPO and asked Detective Miller and the CCPO for their assistance with investigating the tip.

29.     Detective Miller and Detective Harmon identified their target as Robert Kain.

30.     The informant advised these detectives and their departments that he/she would purchase marijuana from Kain by calling him on his cell phone and arranging the buy to take place at Kain's residence.

31.    At all times relevant hereto, Robert Kain lived in Apartment A, 308 Walnut Street, Gloucester City, New Jersey.

32.    The building at 308 Walnut Street consists of two separate and distinct apartments: Apartment A, located on the first floor, and Apartment B (where plaintiff resided), located on the second floor of 308 Walnut Street.

33.    On the building's exterior there were two mail boxes: one adjacent to the exterior entrance to Apartment A and another mailbox adjacent to the exterior door for Apartment B.

34.    As evidenced by public records, which were readily available and located at the Gloucester City municipal building, at least since 2010, 308 Walnut Street was a structure that consisted of two separate distinct apartments: Apartment A, downstairs, and Apartment B, upstairs.

35.    In addition, the Gloucester City records show that building was annually registered as a two-unit rental property, and has been so registered for over a decade. During this entire time, including February 28, 2020, the building also had two separate and distinct utility meters permanently affixed on the exterior of the building: one meter dedicated to Apartment A and a second meter to measure the utility use of Apartment B.

36.    In furtherance of their investigation (and as set forth in the sworn affidavit in support of a search warrant), Detective Joseph Miller, Detective DiGregorio, Detective Banks, Task Force Officer Feger, and members of the CHPD including Detective Harmon, met in Camden County to plan a controlled buy from Kain.

37.    A controlled buy was arranged to occur at 308 Walnut Street between the confidential informant who had provided the tip and Kain during the week of February 2020.

38.     The controlled buy occurred as planned and was witnessed by Detective Joseph Miller, other members of the CCPO, and by Detective Harmon and other members of the CHPD.

39.     Prior to the buy, surveillance of 308 Walnut was set up and carried out by the following officers: Detective Miller, Detective Harmon, and members of the CCPO and the CHPD. These individuals were put into a position to observe the confidential informants entry and exit to the first floor apartment through 308 Walnut Street, which is exactly what they did.

40.     The controlled buy was completed when the confidential informant knocked on the first floor front door of Apartment A, went inside for a few minutes, and then returned with what was believed to be marijuana.

41.     During the setting up of the controlled buy, the surveillance of the property that is 308 Walnut Street and the alleged purchase of marijuana, not a single law enforcement officer or the confidential informant discovered any reason to become concerned with the safety of the confidential informant or that Kain posed any physical threat that could lead anyone to suspect that Kain might be dangerous.

42.     In addition, during the surveillance of 308 Walnut Street, no one observed the involvement or presence of a female or a dog, nor the arrival or departure of any other person including anyone thought to be a suspected buyer of marijuana.

43.     On February 22, 2020, members of the CHPD and the Camden County Sheriff's Department (SERT Team) met to plan a second controlled buy from Kain.

44.     In concert, members of now three organizations, the CHPD, the CCPO and the SERT Team, devised a plan wherein an undercover police officer would meet with Kain at Royal Farms and sell him/her marijuana.

45.     The second controlled buy was arranged via telephone.  As part of the plan, the CCPO personnel were sent to watch 308 Walnut Street and report when Kain left his apartment to complete the sale.

46.     Once the CCPO reported Kain's departure from his apartment, Detective Miller, Detective Harmon, and other members of the CCPO, CHPD, and SERT monitored Kain's movements and had him in their constant surveillance from the time he left his apartment until he completed the transaction at Royal Farms, and returned to his apartment.

47.     Once again, no one who conducted surveillance and/or was involved in the investigation ever noted that Kain accessed the second floor, or even had access to the second floor.  Nor did anyone ever report seeing any activity at all on the second floor.

48.     In addition to viewing the premises located at 308 Walnut Street during the execution of the two controlled buys, and Detective Plews and Officer Boehly supposedly surveilling the building prior to dispatching the SERT team, and, upon arriving to execute the search warrant, members of the CCPO, the SERT Team and the CHPD claim they surveyed the exterior of the residence once more. Again, at no time did any law enforcement person observe the presence of a dog or evidence of a dog.

49.     In fact, prior to raiding Apartment A and prior to their unreasonable, unlawful, unconstitutional entry into Apartment B while plaintiff was sleeping, the CCPO went around the outside of the structure and took pictures of it.

50.     By February 28, 2020, and before the search of 308 Walnut had begun, every law enforcement defendant named herein, Boehly, Kemner, Kolins, McNamee, Mennel, Plews, Souder, Wright, Austin, Bezich, Russomanno, Miller and Harmon,  had the opportunity to examine the exterior of 308 Walnut and see the two separate entrances, the two separate

mailboxes adjacent to each separate entrance, and the two separate utility meters on the exterior of the building.

51.    A final visual examination of the exterior of the building was conducted minutes before the search by every law enforcement officer involved in the raid, and on the outside of the structure there remained, in clear view, two utility meters, two separate mailboxes, and next to each mailbox a separate outdoor entrance to the building, one leading exclusively to the downstairs and the other leading exclusively to the upstairs.

52.    Before the raid commenced, SERT, CCPO and CHPD met to formulate and then review the plan that would be followed by all members of law enforcement relative to the raid.

53.    The individuals in attendance and/or listening to the meeting wherein the plan was formulated included defendants Boehly, Kemner, Kolins, McNamee, Mennel, Plews, Souder, Wright, Austin, Bezich, Russomanno, Miller and Harmon.

54.    The plan that was reviewed called for a "no-knock" raid with entry via the first floor front door only; there was nothing in the law enforcement plan to enter the building by knocking down a second "front door" that was on the side of the building and which led directly to plaintiff's upstairs apartment.

55.    Every individual defendant, Boehly, Kemner, Kolins, McNamee, Mennel, Plews, Souder, Wright, Austin, Bezich, Russomanno, Miller and Harmon,  were advised of the plan.

56.    When the raid began, it was directed solely at the first floor apartment where Kain lived and where one of the controlled buys occurred. Led by Detective Bezich of the CCPO, the first floor door was knocked open with a battering ram and police officers rushed in to seize Mr. Kain and apparently search his apartment.

57.    Upon their entry into the first floor apartment, law enforcement found it to be deserted. There was no sign of Kain nor any dog.

58.    After the officers thoroughly searched the first floor apartment, they marked it clear and reported it to the officers outside of the building.

59.    Significantly, their search of the first floor apartment showed it to be a completely separate unit: there was no stairway or other pathway between the first and second floors.

60.    The search warrant affidavit only described and requested entry through the door that already had been breached – the door to Kain's first floor apartment.

61.    The search warrant itself only authorizes entry through the door leading to the first floor apartment.

62.    Notwithstanding the lack of a search warrant which allowed a no-knock search and entry through the one door at the front of the building, as described in detail in the supporting affidavit and the signed search warrant, Miller and Plews ordered the officers, particularly Wright, Bezich, Russomanno, Kolins, and other officers on the scene but yet to be identified by name, to breach the plaintiff's front door, raid her apartment and search it.

63.    These officers, accompanied by Plews and Miller, knocked open the door to plaintiff's apartment and, with guns drawn, raided her apartment.

64.    When these aforesaid defendants entered plaintiff's apartment, they did so with guns drawn and immediately pointed their firearms directly at the plaintiff, while barking out commands and accusing the plaintiff of criminal activity.

65.    During this time, plaintiff was lying in her bed naked and terrified.

66.    The second floor apartment is very small and the entirety of the apartment can be seen from the area of the front door.  Therefore, as acknowledged by defendant Wright during

his Internal Affairs interview and his subsequent encounter with the plaintiff, within seconds of entering plaintiff's apartment, the defendants knew that plaintiff was not the target of their investigation, knew that she was not involved in the criminal activity which established the basis of the search warrant, and could see she was the only person on the second floor.

67.    Despite knowing this, the law enforcement officers who raided plaintiff's apartment continued to point their firearms at her and continued barking orders which included ordering her to get out of bed even though she was naked, and otherwise ordering her (again, at gun point) not to move while they searched the apartment.

68.    When plaintiff told officers she could not get immediately out of her bed because she was naked, at least one officer cocked his weapon, (plaintiff heard the click) and told plaintiff to shut up and do what she was told.

69.    While one officer told plaintiff that the officers would turn away and not view plaintiff while she put on some clothes, that did not happen and the officers viewed plaintiff while she was completely naked.

70.    Once plaintiff was able to get a shirt on, law enforcement then placed her in restraints and continued to yell at her and accuse her of lying to them and being involved in criminal activity.

71.    When  law enforcement officers (Bezich, Kolins, Wright, Russomanno, Kemner, Plews, Miller, and others) finally began to leave plaintiff's apartment, plaintiff said something to the effect that what the officers had just done to her was wrong. Officer Zachery Kolins turned toward plaintiff and began coming toward her in an angry and extremely threatening manner, while yelling and screaming obscenities in an obvious attempt to harass, intimidate, and terrify her in her own home. He was successful.

72.     Despite knowing the target was a 26-year-old white male who lived in the first floor apartment and who was clearly not in plaintiff's apartment, and who up to this point posed no threat and gave absolutely no indicia that he or anything about him or 308 Walnut was dangerous, Kolins, Kemner, and Russomanno put the plaintiff in restraints with zip ties, and ordered her not to move.

73.     While to plaintiff it seemed like forever, law enforcement remained in her home for approximately 25 minutes. When the officers left the apartment, they did so without releasing the restraints they had put on plaintiff's wrist.  Plaintiff had to  run over to her stairwell and ask to have someone come back and remove the zip ties from around her wrists.

74.     Based upon the information available and/or already in possession of law enforcement officers at the scene of the raid, and/or the language contained in the search warrant, the aforesaid law enforcement officers who raided plaintiff's apartment knew that the raid was unreasonable, unlawful, and violative of the plaintiff's fourth amendment right not to be subject to an unreasonable search and seizure.

75.     The officers who raided plaintiff's home willfully and wantonly ignored and/or were reckless in ignoring the language of the search warrant and the evidence on the building's exterior and/or the Gloucester City property which show that there were two apartments in 308 Walnut, causing them to  conduct  the unlawful, unreasonable, and unconstitutional raid of plaintiff's home.

76.     The affidavit submitted by Detective Joseph Miller and Detective Jason Harmon contained false information.

77.     The affidavit said 308 Walnut was a single family residence.  It was not.

78.    The affidavit indicated that the building had one main entrance door, the location of which was described in great detail in the affidavit. This was not true.  There were two separate doors.

79.    The affidavit failed to advise the court that the structure was two stories.

80.    The affidavit states that there was a vicious dog on the premises and, as a result, they needed a no-knock warrant.  This was not true.

81.    The affiants failed to advise the judge of the two meters, two separate doors, two separate mailboxes, or the city records that show the structure contained a separate upstairs and separate downstairs apartment.

82.    Detective Miller and Detective Harmon presented these misrepresentations and omissions to the court intentionally and/or with a reckless disregard for the truth.

83.    The trauma plaintiff experienced when the search warrant was executed and her residence raided on February 28, 2020, has left her with serious and permanent psychological injury.

84.    Sometime soon after the search, plaintiff was with a friend at a local place of business, The Highland Tavern located at 308 Orlando Avenue, Gloucester City, New Jersey, when she was inappropriately approached by defendant David Wright of the Camden County Office of the Sheriff, causing her further anxiety and distress.

85.    Wright had a conversation with the plaintiff during which he apologized for the raid.  During this conversation, however, Wright made references to plaintiff's body, how sexy she was, and that someone as sexy as her should not have that happen.  Wright then placed his hand on plaintiff's thigh.

86.    This encounter with Wright has further traumatized plaintiff, and caused her additional injury and damage.

87.    Some weeks after the encounter with Wright,  individuals associated and/or employed by the Camden County Prosecutor and the Camden County Sheriff's department acting at the direction and on behalf of the defendants, came to the plaintiff's residence again, allegedly searching for the party they believed lived in the apartment downstairs.

88.    As incredible as it may seem, some weeks after the second wrongful illegal intrusion, defendants came to the plaintiff's home for the third time, claiming again that the original target of their investigation was in the plaintiff's apartment and/or being hidden or protected by the plaintiff. When law enforcement came this last time, plaintiff became overwhelmed, fell to the ground and began crying.

89.    These aforesaid wrongful, uninvited contacts and intrusions into the life of the plaintiff have caused her to suffer  mental and emotional injuries.

90.    The injuries suffered by plaintiff Krystal A. Underwood at the hands of the defendants was so severe that Krystal A. Underwood ended up in Jefferson Cherry Hill Hospital for psychological treatment and was required to have follow-up care and rehabbing from the mental abuse and psychological trauma she suffered.

91.    By reason of the aforesaid, plaintiff Krystal A. Underwood has been severely and permanently injured, has suffered, still suffers, and will in the future suffer great pain and anguish, and was obliged, still is, and will be obliged in the future to expend sums of money for medical and needed care for relief of the aforesaid emotional injuries.

92.    Plaintiff  Krystal A. Underwood served timely notice of claim for her damages as prescribed by the New Jersey Tort Claim act, N.J.S.A. 59:8-1 *et. seq*.

93.    More than six months have passed since the service of plaintiff Krystal A. Underwood's Notice of Claims and plaintiff  Krystal A. Underwood's claims for payment remain unsatisfied.

## **FIRST COUNT**

**(Against defendants, Camden County Office of the Sheriff, Camden County Prosecutor's Office, The Cherry Hill Police Department, the SERT Team, and ABC Corporations 1-5)**

**[Constitutional and Statutory Claims]**

94.    Plaintiff  Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 93 as though recited herein verbatim and at length.

95.    The Camden County Prosecutors Office (CCPO), the Camden County Sheriff's Department, and the Cherry Hill Police Department (CHPD) knew but ignored the fact that 308 Walnut Street had a first floor apartment where the target Kain lived and a second floor apartment where plaintiff lived.

96.    Each of the organizations involved had multiple views and examinations of the exterior of 308 Walnut which always displayed two utility meters, two separate entrance doors and storm doors, and a separate  mailbox by each door.

97.    Each organization (and the public at large)  had access to Gloucester City property records which would make unmistakably clear that 308 Walnut has been a two-unit rental property since as early as 2010.

98.    Each of these organizations, by and through their employees identified herein, intentionally, willfully, wantonly, and/or in reckless disregard violated the plaintiff's federal and state constitutional right against a search and seizure without probable cause, and/or without a

search and seizure without a valid warrant, by breaking down her door, storming into her bedroom, and acting outrageously as heretofore described.

99.    The entry and search of plaintiff's home was an illegal and unreasonable search, violative of the plaintiff's Fourth Amendment (State and Federal) right to be free of unreasonable search and seizure, because the warrant did not authorize entry to the building through the plaintiff's door or entry to the second floor of 308 Walnut.

100.    Moreover, once the defendants entered plaintiffs home, they knew immediately that their target was not there and that plaintiff had nothing to do with his alleged illegal activity. At this point they knew their presence in her apartment was violative of plaintiff's Fourth Amendment rights. Despite knowing this and knowing they had (1) no probable cause to enter plaintiff's apartment, and (2) no probable cause to remain in her apartment, detain or restrict her movements in any way, or search her apartment, defendants, and in particularly those specifically identified heretofore, continued to order plaintiff out of bed, search her apartment, and restrain her with zip ties.

101.    The conduct of law enforcement, in particular the officers identified as having entered plaintiff's home and remaining there and continuing to search her home, restrain her, handcuff her, yell and scream at her, accuse her of criminal conduct, intimidate and harass her, humiliate her,  and otherwise detain and refrain her from moving around in her own home, was egregious, outrageous, and clearly a violation of her federal and state constitutional right to be free of unreasonable searches, seizures, and detentions.

102.    The above-claimed actions and omissions were engaged in under the color of law and authority of the defendants Camden County Office of the Sheriff, Camden County Prosecutor's Office, Cherry Hill Police Department and ABC Corporations 1-5. The said acts

and omissions included the unconstitutional and illegal search and seizure of plaintiff Krystal A. Underwood, and the use of excessive, unnecessary and unconstitutional force against Krystal A. Underwood. The said acts and omissions deprived plaintiff Krystal A. Underwood of due process, civil and constitutional rights, and privileges and immunities guaranteed to her by the Constitution of the United States, (including but not limited to her Fourth Amendment right to be free from the unlawful seizure or detention of her person, her Fourth Amendment right not to be subjected to the use of excess force, her Eighth Amendment right to be free from cruel and unusual punishment, and her Fifth and Fourteenth Amendment rights to due process of law); (42 U.S.C. §1983); the New Jersey Constitution (including but not limited to Article I, Sections 1, 7 and 12); the New Jersey Civil Rights Act, N.J.S.A.10:6-1 *et seq*.,  and the New Jersey Tort Claims Act, N.J.S.A. 59:2-2(a).

103.    Defendants named herein failed to have proper policies and procedures in effect and failed to adequately train and/or supervise their employees with respect to situations such as that involving plaintiff Krystal A. Underwood, and said defendants knew or should have known that their failure to implement appropriate policies and procedures and to properly train and supervise employees would result in civil rights violations such as those described above.

104.    The failure of the defendants, Camden County Office of the Sheriff, Camden County Prosecutor's Office, the Cherry Hill Police, and ABC Corporations 1-5 to properly train and supervise their police officers, agents and/or employees as well as the actions, inactions, procedures and policies – or lack thereof – taken, created and implemented by said defendants were a direct and proximate cause of the wrongful conduct and deprivation of rights enumerated above, and of the damages incurred by plaintiff, Krystal A. Underwood.

WHEREFORE, plaintiff, Krystal A. Underwood demands judgment against defendants Camden County Office of the Sheriff, Camden County Prosecutor's Office, the Cherry Hill Police Department, the SERT Team, and ABC Corporations 1-5 jointly and severally, as follows:

A.    Compensatory damages;

B.    Punitive damages;

C.    Costs of suit and interest;

D.    Reasonable attorney fees pursuant, *inter alia* to 42 U.S.C. §1988; and

E.    Any further relief this court deems appropriate and just.

## SECOND COUNT

**(Against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Camden County Office of the Sheriff Emergency Response Team (SERT), Detective Joseph Miller, detective Jason Harmon, and John/Jane Does 1-10)**

### [Constitutional and Statutory Claims]

105.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 104 as though recited herein verbatim and at length.

106.    The above-complained of actions and omissions by defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County Office of the Sheriff Emergency Response Team (SERT) and John/Jane Does 1-10, were engaged in under color of law and state authority. The said acts and omissions included (but were not limited to) the unconstitutional and illegal search and seizure of plaintiff, Krystal A. Underwood, the use of excessive, unnecessary, and unconstitutional

force against Krystal A. Underwood, and the unlawful detention and restraint of Krystal Underwood.

107.    Each of these defendants used their authority and each acted in his capacity as a police officer and/or SERT Officer while committing these acts and other acts and omissions set forth throughout this complaint.    Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective James Harmon, Detective Joseph Miller, Camden County Office of the Sheriff Emergency Response Team SERT Officers and John/Jane Does 1-10 deprived plaintiff Krystal A. Underwood of due process, civil and constitutional rights, and privileges and immunities guaranteed to her by the Constitution of the United States, including but not limited to her Fourth Amendment right to be free from the unlawful seizure of her person and the unnecessary and excessive force exerted during her detention and seizure, her Eight Amendment right to be free from cruel and unusual punishment, and her Fifth and Fourteenth Amendment rights to due process of law); 42 U.S.C. §1983; the New Jersey Constitution (including but not limited to Article I, Sections 1, 7 and 12); the New Jersey Civil Rights Act, N.J.S.A.10:6-1 *et. seq.* and the New Jersey Tort Claims Act. N.J.S.A. 59:3-1a.

108.    Defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10, acted intentionally and knew or should have known that their acts or omissions would result in violations of plaintiff Krystal A. Underwood's due process, civil and constitutional rights, and privileges and immunities, as described hereinabove.

109.    The acts and omissions as described above of defendants, Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective James Harmon, Camden County SERT Officers and John/Jane Does 1-10 were intentional and were a direct and proximate cause of the injuries suffered by plaintiff Krystal A. Underwood.

WHEREFORE, plaintiff Krystal A. Underwood demands judgment against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Camden County SERT Officers and John/Jane Does 1-10, jointly and severally, as follows:

A.    Compensatory damages;

B.    Punitive damages;

C.    Costs of suit and interest;

D.    Reasonable attorney's fees pursuant, *inter alia* to 42 U.S.C. §1988; and

E.    Any further relief this court deems appropriate and just.

## **THIRD COUNT**

**(Against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Camden County Office of the Sheriff Emergency Response Team (SERT), Detective Joseph Miller, Detective Jason Harmon, and John/Jane Does 1-10)**

### **[Intentional Infliction of Emotional Distress]**

110.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 109 as though recited herein verbatim and at length.

111.    The conduct of defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Camden County SERT Officers, Detective Joseph Miller, Detective Jason Harmon**,** and John/Jane Does 1-10 as set forth above was accompanied by wanton, reckless and willful disregard of the high degree of probability that plaintiff Krystal A. Underwood would suffer emotional distress as a result of said defendants' actions.

112.    The damages suffered by plaintiff  Krystal A. Underwood were caused by defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon**,** Camden County SERT Officers and John/Jane Does 1-10's intentional and/or reckless acts or omissions.

113.    The conduct of defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon**,** County SERT

Officers and John/Jane Does 1-10 was severe and outrageous, constituting an intentional infliction of emotional distress upon plaintiff Krystal A. Underwood.

114.    When the said defendants engaged in the described conduct they did so deliberately and intentionally with the knowledge and/or intent that said conduct would likely cause plaintiff Krystal A. Underwood emotional distress.

115.    As a direct and proximate result, plaintiff Krystal A. Underwood suffered extreme and severe emotional distress, anxiety and physical manifestations thereof, all to her detriment and damage.

WHEREFORE, plaintiff Krystal A. Underwood demands judgment against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10, jointly and severally, as follows:

A.    Compensatory damages;

B.    Punitive damages;

C.    Attorney's fees, costs of suit and interest; and

D.    Any further relief this court deems appropriate and just.

## FOURTH COUNT

**(Against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County Office of the Sheriff Emergency Response Team (SERT and John/Jane Does 1-10)**

**[Negligent Infliction of Emotional Distress]**

116.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 115 as though recited herein verbatim and at length.

117.    If not done deliberately and/or willfully, intentionally and/or recklessly, the conduct of defendants Detective Joseph Miller, Detective Jason Harmon, Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Camden County SERT Officers and John/Jane Does 1-10 as set forth above was negligent.

118.    It was reasonably foreseeable by defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10 that the complained of conduct would cause genuine and substantial emotional distress or emotional harm to the average person.

119.    As a direct and proximate result of the conduct of defendants, Detective Joseph Miller, Detective Jason Harmon, Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Camden County SERT Officers and John/Jane Does 1-10, plaintiff Krystal A. Underwood suffered extreme and severe emotional distress and physical manifestations thereof.

24

120.    By reason of such negligent infliction of emotional distress, plaintiff Krystal A. Underwood has suffered damages.

WHEREFORE, plaintiff Krystal A. Underwood demands judgment against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10, jointly and severally, as follows:

        A.      Compensatory damages;

        B.      Attorney's fees, costs of suit and interest; and

        C.      Any further relief this court deems appropriate and just.

## FIFTH COUNT

**(Against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County Office of the Sheriff Emergency Response Team (SERT) and John/Jane Does 1-10)**

**[Negligence]**

121.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 120 as though recited herein verbatim and at length.

122.    The acts of defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10as set forth above were negligent.

123.    It was reasonably foreseeable by said defendants that their conduct would cause injury to plaintiff Krystal A. Underwood.

124.    As a direct and proximate result of the negligence of defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10, plaintiff Krystal A. Underwood sustained psychological and emotional injuries and financial loss.

WHEREFORE, plaintiff, Krystal A. Underwood demands judgment against defendants, Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and John/Jane Does 1-10, jointly and severally, as follows:

A.    Compensatory damages;

B.    Attorney's fees, costs of suit and interest; and

C.    Any further relief this court deems appropriate and just.

## SIXTH COUNT

### (Against defendants, Camden County Office of the Sheriff, Camden County Prosecutor's Office, Cherry Hill Police Department, and ABC Corporations 1-5)

### [Vicarious Liability]

125.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 124 as though recited herein verbatim and at length.

126.    At all relevant times, defendants, Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and various John/Jane Doe defendants were servants, agents and/or

employees of defendants Camden County Office of the Sheriff, Camden County Prosecutor's Office and/or ABC Corporations 1-5.

127.    The acts and omissions of defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and various John/Jane Doe defendants set forth above were taken in performance of their respective duties as servants, agents and/or employees of defendants.

128.    The said acts and omissions were incidental to the performance of the duties of defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and various John/Jane Doe defendants.

129.    Defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County SERT Officers and various John/Jane Doe defendants intentional, malicious, reckless and/or negligent acts occurred substantially within the time and space limits of their employment and were motivated in part to serve the defendants Camden County Office of the Sheriff, Camden County Prosecutor's Office and/or ABC Corporations 1-5.

WHEREFORE, plaintiff Krystal A. Underwood demands judgment against defendants Camden County Office of the Sheriff, Camden County Prosecutor's Office and/or ABC Corporations 1-5 jointly and severally, as follows:

A.    Compensatory damages;

B.    Punitive damages;

C.    Attorney's fees, costs of suit and interest; and

D.    Any further relief this court deems appropriate and just.

## SEVENTH COUNT

**(Against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, D Detective Joseph Miller, Detective Jason Harmon, Camden County Office of the Sheriff Emergency Response Team (SERT) and John/Jane Does 1-10)**

**[Failure to Act]**

130.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 129 as though recited herein verbatim and at length.

131.    Defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon**,** Camden County SERT Officers and John/Jane Does 1-10 each knew of the intentional acts and omissions of the other defendants as described heretofore and knew that there acts were unlawful, unreasonable, unconstitutional  and/or injurious to plaintiff. actions of the other defendants, yet did nothing to prevent or stop them.

132.    By reason of their presence at the scene, the said defendants were each duty bound to attempt to stop or prevent the unlawful conduct of the other defendants upon the plaintiff Krystal A. Underwood.

133.    The said defendants each knew and intentionally took no action to stop or prevent the acts of the other defendants.

134.    As a direct and proximate result, plaintiff  Krystal A. Underwood has been damaged.

28

WHEREFORE, plaintiff Krystal A. Underwood demands judgment against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon**,** Camden County SERT Officers and John/Jane Does 1-10, jointly and severally, as follows:

      A.     Compensatory damages;

      B.     Attorney's fees, costs of suit and interest; and

      C.     Any further relief this court deems appropriate and just.

## **EIGHTH COUNT**

### **(Against defendants Michael Higgins, John/Jane Doe and/or ABC Corporation)**

135.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 134 as though recited herein verbatim and at length.

136.    The owner and/or landlord and/or person or entity responsible for maintaining the property, Michael Higgins, John/Jane Doe, and/or ABC Corporation, failed to provide the proper markings, signs, or numbering for the apartments located at 308 Walnut Avenue property, and/or failed to properly register the property or otherwise publicize or notify Gloucester City, Camden County, and/or the State of New Jersey that the property at 308 Walnut Avenue consisted of two separate apartments with separate entrances.

137.    As a direct and proximate result of the conduct described in the previous paragraph, plaintiff, Krystal A. Underwood was subjected to the misconduct of the other defendants as described throughout the complaint.

138.    As a direct and proximate result of the negligent conduct of defendant Higgins, Krystal Underwood suffered damage.

WHEREFORE, plaintiff Krystal A. Underwood demands judgment against defendants Michael Higgins, John/Jane Doe and/or ABC Corporation, jointly and severally, as follows:

     A.     Compensatory damages;

     B.     Attorney's fees, costs of suit and interest; and

     C.     Any further relief this court deems appropriate and just.

## NINTH COUNT

**(Against Defendants and Joseph Miller and Jason Harmon.)**

**[Judicial Deception]**

139.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 138 as though recited herein verbatim and at length.

140.    Defendants Jason Harmon and Joseph Miller submitted an affidavit to a judge to secure a warrant to search 308 Walnut Avenue.

141.    The affidavit contained misrepresentations and omissions material to the finding of probable cause to search 308 Walnut, and in particular the plaintiff's second floor apartment.

142.    These representations and omissions as set forth previously in this complaint were made intentionally and/or with a reckless disregard for the truth.

143.    These misrepresentations were highly unreasonable and were an extreme departure from a standard of ordinary care, especially the standard of care expected in an affidavit asking for a warrant allowing law enforcement to break into a home unannounced and search that home.

144.    As a result of the above described conduct, the plaintiff has been damaged.

WHEREFORE plaintiff, Krystal A. Underwood demands judgment against defendants Detective Joseph Miller and Detective Jason Harmon, jointly and severally as follows:

      A.      Compensatory damages;

      B.      Punitive damages;

      C.      Attorney's fees, costs of suit and interest; and

      D.      Any further relief this court deems appropriate and just.

### **TENTH COUNT**

**(Against defendants Brad Boehly, Mark Kemner, Zachary Kolins, Michael McNamee, Scot Mennel, Robert Plews, Donald Souder, David Wright, Andrew Austin, Stephen Bezich, Sal Russomanno, Detective Joseph Miller, Detective Jason Harmon, Camden County Office of the Sheriff Emergency Response Team (SERT) and John/Jane Does 1-10; and defendants Camden County Office of the Sheriff, Camden County Prosecutor's Office and ABC Corporations 1-5, Michael Higgins, John/Jane Doe and/or ABC Corporation)**

#### **[ Punitive Damages]**

145.    Plaintiff Krystal A. Underwood repeats the allegations contained in paragraphs 1 through 144 as though recited herein verbatim and at length.

146.    The acts of each of the defendants were knowing, intentional, willful, malicious, wanton, reckless and grossly negligent.

147.    As explained throughout this complaint, each of the defendants intentionally disregarded many facts which established that there was never any probable cause or valid search warrant to raid plaintiff's home, search the home, detain plaintiff, restrain her, and employ excessive force during the raid and her detention.

148.    In addition, Detectives Miller and Harmon intentionally, knowingly, and/or in reckless disregard of the truth, provided a false and misleading affidavit to obtain a search warrant for 308 Walnut.

149.    Based on the false and misleading information, the above described unreasonable seizure of plaintiff and search of her residence occurred.

150.    When the seizure/detention of plaintiff and the search of her apartment occurred, because of the evidence in plain view on the exterior of the building, the property records of Gloucester City, and the language in the warrant itself only authorizing entry through the front door of the first floor apartment, the location and appearance of which painstakingly described with great detail in the warrant, every law enforcement officer either knew that entry into the plaintiff's apartment was not authorized by the warrant and/or there was no probable cause to enter plaintiff's apartment and search it.

151.    Despite these facts, defendants Wright, Kemner, Miller, Plews, Kolins, Bezich, Russomanno, and Harmon raided the plaintiff's apartment, restrained her, detained her, humiliated her, harassed and terrified her.

152.    Their actions constituted an unreasonable search, seizure, and detention under the Fourth amendment to the United States Constitution and the Constitution of the State of New Jersey.

153.    These actions were done with the approval and in concert with and under the supervision of the CCPO, SERT, and the CHPD.

154.    For these reasons, plaintiff Krystal A. Underwood is entitled to an award of compensatory and punitive damages against defendants.

WHEREFORE, plaintiff  Krystal A. Underwood demands judgment against all defendants, jointly and severally, as follows:

    A.    Compensatory damages;

    B.    Punitive damages;

C.      Attorney's fees, costs of suit and interest; and

D.      Any further relief this court deems appropriate and just.


*Thomas J. Gossé, Esquire*
THOMAS J. GOSSÉ, ESQUIRE

**DATED:** December 5, 2022